**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

May 17, 2021

**VIA ECF**

Hon. Stewart D. Aaron
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:   *De Jesus Prudente v. Brother's Bakery Café Corp. et al.*,
            **No. 21-cv-00594 (SDA)**

Dear Judge Aaron:

     This office represents named plaintiff Adan De Jesus Prudente ("De Jesus" or "Plaintiff"). We write, jointly with counsel for Brother's Bakery Cafe Corp., Antonio Salinas and Oscar Salinas (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's April 15, 2021 Order. Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.[1]

**I.**    **Procedural History and Plaintiff' Allegations**

     Plaintiff commenced this action by filing his Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on January 22, 2021. (Dkt. No. 1). After discussing early mediation, the parties agreed to extend Defendants' time to respond to the Complaint to April 16, 2021, after the scheduled mediation, should the mediation fail to resolve the Action. (Pelton Aff. ¶ 5; Dkt. No. 13).

     On March 3, 2021, the Court referred this Action to mediation under the FLSA early mediation pilot program and instructed the parties to exchange certain information and materials prior to such mediation. (Dkt. No. 12) (the "Mediation Order'). Pursuant to the Mediation Order, Defendants produced certain time and payroll records, specifically time cards, pay slips and wage statements, and Plaintiffs produced certain order receipts as well as damages calculations. (Pelton Aff. ¶ 6).

---

[1] The parties have agreed to the final language of the Settlement Agreement and are in the process of obtaining all signatures, which we expect to receive shortly. Once all parties have executed the Agreement, Plaintiffs will file the fully-executed Settlement Agreement.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Stewart D. Aaron
FLSA Settlement Fairness Letter
Page **2** of **6**

The parties participated in a mediation on April 6, 2021 before S. Reid Kahn, Esq. (Pelton Aff. ¶ 7). At that time, the parties reached a settlement in principle. (*Id.*) Subsequently, the parties finalized, drafted, and executed the Settlement Agreement. (*Id.*) As set forth in the Settlement Agreement, the Agreement, as well as the mediation proceedings, were translated into Spanish for Plaintiff De Jesus by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**. (*Id.* ¶ 8).

## II.     The Settlement Accounts for Litigation Risk

Plaintiff worked at Defendants' café, located at 2155 Second Avenue, New York, NY 10029, from August 2017 to December 2019, minus a one-year period between August 2018 and September 2019.  Plaintiff performed a range of duties, including dishwashing, unloading inventory, cleaning the premises, packing orders, and making deliveries. On average, Plaintiff spent about 80% of his time performing non-tipped work. Plaintiff alleged that, throughout his employment he typically worked well in excess of forty (40) hours per week, from an average of fifty-five (55) in 2017 to forty-one (41) in 2019.  Plaintiff alleged that he was paid at straight-time rates for all hours worked, including hours over forty (40) per week, received less than minimum wage for a portion of his employment, and did not receive spread of hours premiums when he worked in excess of ten (10) hours per day. Plaintiff also alleged that Defendants failed to provide him with accurate and proper wage notice or accurate wage statements that fulfill the requirements of the NYLL § 195. Finally, Plaintiff alleged that he did not receive all of the tips to which he was entitled, specifically credit card tips paid through various food delivery apps such as GrubHub and Seamless.

Throughout the litigation, the Parties have disputed several issues of fact, including specifically the accuracy of Defendants' produced time cards, pay slips and wage statements. Defendants maintain that their time and pay records are accurate and demonstrate that Plaintiff was paid correctly. Plaintiff alleged that Defendants' pay records, particularly those showing his payment of wages, are incorrect, demonstrate improper rounding and inconsistencies, and affirm Defendants' failure to pay spread of hours premiums and credit card tips. While Plaintiff believes that a factfinder would credit his testimony over Defendants, Plaintiff recognizes that existing time and pay records could potentially limit the amount of damages he could recover at trial, particularly for his unpaid overtime claims and wage notification claims, if a factfinder credited Defendants' testimony and records in their entirety.

In preparation for the mediation, Plaintiff created a damages analysis based on Defendants' records and Plaintiff's testimony regarding his wages. In total, Plaintiff's damages analysis calculated $245.59 in unpaid minimum wage, $3,750.85 in unpaid overtime, $416.00 in unpaid spread of hours premiums and $13,600.00 in unpaid tips for a total of $18,012.44 in unpaid tips; $18,012.44 in liquidated damages; $10,000.00 in wage notice and wage statement damages, and $3,987.89 in prejudgment interest as of the date of the mediation statement for a grand total of $50,012.77.  Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he would receive much lower damages, or

nothing at all. As mentioned above, the Parties have disputes as to the facts and merits of Plaintiff's claims and the accuracy of Defendants' records. Accordingly, Plaintiff prefers to settle now for an amount that he would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $12,500.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, particularly as the settlement well exceeds Plaintiff's calculations for all unpaid minimum wage, overtime and spread of hours premiums as calculated in accordance with Defendants' records.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $12,500.00 (the "Settlement Amount"). Of the Settlement Amount, $4,640.53 is payable to Plaintiff's counsel (consisting of $710.80 in expense reimbursements and $3,929.73 in attorneys' fees). The remaining $7,859.47 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiff and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV.  Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of May 17, 2021, Plaintiff's counsel has spent more than 71 hours in prosecuting and settling this matter, resulting in a lodestar of $18,228.54. *See* Pelton Aff. Ex. C. Plaintiff's counsel has spent $710.80 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiff's seek as attorneys' fees (i.e., $3,929.73) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, and represents significantly less than the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Eastern District of New York. *See, e.g., Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations and exchange of damages and documents. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff, including records produced by Defendants and disputed merits issues. Due to several disputed issues of fact, the parties would likely need to engage in discovery including depositions, as well as motion practice including collective and class certification, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

\* \* \* \* \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Hon. Stewart D. Aaron
FLSA Settlement Fairness Letter
Page **6** of **6**

Respectfully submitted,

By: */s   Brent E. Pelton, Esq.*　　　　　By: */s Gina Nicotera, Esq.*
Brent E. Pelton, Esq.　　　　　　　　　　　Gina Nicotera, Esq.
Taylor B. Graham, Esq.　　　　　　　　　　**LANDMAN CORSI BALLAINE & FORD, P.C.**
**PELTON GRAHAM LLC**　　　　　　　　　120 Broadway, 13th Floor
111 Broadway, Suite 1503　　　　　　　　　New York, New York 10271
New York, New York 10006

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

*Attorneys for Plaintiff*

cc:    All counsel (via ECF)

www.PeltonGraham.com